## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **VISTA PEAK VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **NANJING CEC PANDA LCD** | § | |
| **TECHNOLOGY CO., LTD.,** | § | **CIVIL ACTION NO. _____** |
| **NANJING ELECTRONICS** | § | |
| **INFORMATION INDUSTRIAL** | § | |
| **CORPORATION, CEC PANDA FLAT** | § | |
| **PANEL DISPLAY TECHNOLOGY CO.,** | § | |
| **LTD., TPV TECHNOLOGY LIMITED,** | § | |
| **TOP VICTORY INTERNATIONAL** | § | |
| **LIMITED, TOP VICTORY** | § | |
| **INVESTMENTS, LTD., TPV DISPLAY** | § | |
| **TECHNOLOGY (WUHAN) CO., TPV** | § | |
| **DISPLAY TECHNOLOGY (BEIHAI)** | § | |
| **CO., TPV ELECTRONICS (FUJIAN)** | § | |
| **CO., LTD., and TPV TECHNOLOGY** | § | |
| **(NINGBO) CO., LTD.** | § | |
| **Defendants.** | | |

### PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Vista Peak Ventures, LLC ("VPV") files this Complaint against Defendants

Nanjing CEC Panda LCD Technology Co., Ltd. ("Panda LCD"), Nanjing Electronics Information

Industrial Corporation ("CEC Panda"), CEC Panda Flat Panel Display Technology Co., Ltd.

("Panda FPD"), TPV Technology Limited, ("TPV"), Top Victory Investments, Ltd. ("Top

Victory"), and Top Victory International Limited ("Top Victory Int'l") "), TPV Display

Technology (Wuhan) Co. ("TPV Wuhan"), TPV Display Technology (Beihai) Co. ("TPV

Beihai"), TPV Electronics (Fujian) Co., Ltd. ("TPV Fujian"), and TPV Technology (Ningbo) Co.,

Ltd. ("TPV Ningbo") for infringement of U.S. Patent No. 7,046,327 ("the '327 patent"), U.S.

Patent No. 6,549,259 ("the '259 patent"), U.S. Patent No. 6,812,528 ("the '528 patent"), U.S. Patent No. 6,870,593 ("the '593 patent"), U.S. Patent No. 7,006,065 ("the '065 patent"), U.S. Patent No. 6,657,619 ("the '619 patent"), U.S. Patent No. 7,593,070 ("the '070 patent"), and U.S. Patent No. 6,486,931 ("the '931 patent"), collectively, the "Asserted Patents." Defendants Panda LCD, CEC Panda, Panda FPD, TPV, Top Victory, and Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo are collectively referred to herein as "Defendants."

## THE PARTIES AND RELATED BACKGROUND

1.    Vista Peak Ventures, LLC is a Texas limited liability company, located at 1400 Preston Rd, Suite 472, Plano, TX 75093.

2.    Upon information and belief, Defendant Panda LCD is a company established in 2009 in the People's Republic of China ("PRC") with limited liability and is a non-wholly owned subsidiary of China Electronics Corporation ("CEC"). Defendant Panda LCD has its principal place of business located at 3rd Ring Rd, Qixia, Nanjing, Jiangsu, China. CEC is a Chinese state-owned company established in 1989 to operate and manage state-owned assets. *See About CEC*, CHINA ELECTRONICS CORPORATION, http://en.cec.com.cn/jtjj/list/index_1.html. In 2000, CEC became a "key state-owned enterprise directly managed by the central government." *Id*. Since that time, CEC has acquired several electronics companies, including the Panda Electronics Group in 2007 and TPV Technology Co., Ltd. in 2009. *Id*. Currently, CEC has about 20 wholly-owned and controlled secondary enterprises and about 14 listed companies. *Id*.; *see also Subsidiaries*, CHINA ELECTRONICS CORPORATION, http://en.cec.com.cn/cyqy/list/index_1.html. CEC and its subsidiaries (collectively referred to as the "CEC Group") are engaged in the business of "network security, new display, integrated circuits, high-tech electronics, information services and other electronic information industry fields featuring national strategy, foundation and guidance,"

including manufacturing and supplying of "LCD products," such as TVs and computer monitors. *See About CEC*, CHINA ELECTRONICS CORPORATION, http://en.cec.com.cn/jtjj/list/index_1.html.

3.     Upon information and belief, Defendant Nanjing Electronics Information Industrial Corporation ("CEC Panda") is a state-owned limited liability company established in the PRC. *See 2019 Interim Report*, NANJING PANDA ELECTRONICS COMPANY LIMITED, p. 2, http://www.panda.cn/uploadfiles/2019/09/201909251013301330.pdf (providing name of the company as "南京中電熊猫信息產業集團有限公司" which according to Word's translator translates to "Nanjing CLP Panda Information Industry Group Co., Ltd."). CEC Panda has its principal place of business located in the PRC at 20th - 23rd Floor, China Power Information Building, 37 Jianning Road, Nanjing, China, Post Code: 210037. CEC Panda "is principally engaged in three major sectors, including new displays, electronic devices and modern services, which cover industries such as display devices, high-tech electronic equipment, industrial automation system equipment, transport electronic system equipment, digital home electrical appliances, components, trading and services." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp.                                                                                           9-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/2018060716470100013167990_en .pdf. Panda LCD is 16.75% owned by CEC and 39.36% owned by CEC Panda. CEC also owns about 70% of CEC Panda.

4.     Upon information and belief, Defendant CEC Panda Flat Panel Display Technology Co., Ltd. ("Panda FPD") is a limited liability company formed under the laws of the PRC in 2012 as a joint venture between Defendant Panda LCD and Defendant Top Victory Investments, Ltd. ("Top Victory"). Defendant Panda FPD has its principal place of business

located at 3rd Ring Rd, Qixia, Nanjing, Jiangsu, China, and is partly owned by shareholders CEC, CEC Panda, and Nanjing Huadong Electronics Information & Technology Company Limited ("Nanjing Huadong"), which is the majority shareholder. Nanjing Huadong is a company established in the PRC with limited liability and is a non-wholly owned subsidiary of CEC.

5.     Upon information and belief, Defendant TPV Technology Limited ("TPV") is a corporation existing under the laws of Bermuda, with its principal place of business at Units 1208-16, 12/F, C-Bons International Center, 108 Wai Yip Street, Kwun Tong, Kowloon, Hong Kong. TPV is a publicly-traded company whose shares are listed primarily on the Stock Exchange of Hong Kong Limited and secondarily listed on the Singapore Exchange Limited. CEC is the ultimate controlling shareholder of TPV. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, p. 26, http://api.aconnect.com.hk/Attachment/37735. Upon information and belief, TPV is an original design manufacturer of TVs and monitors and also distributes its own brands "AOC" and "Envision." *See* Group Profile, TPV Technology, http://www.tpv-tech.com/en/GroupProfile.aspx (last visited Mar. 12, 2020).

6.     Upon information and belief, Defendant Top Victory Investments, Ltd. ("Top Victory") is a corporation existing under the laws of Hong Kong, with its principal place of business at Rm 1023, 10th Fl, Suite 1023 Harbour City, 5 Canton Road, Tsim Sha Tsui Hong Kong. Top Victory is an indirectly wholly-owned subsidiary of TPV. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, p. 131, http://api.aconnect.com.hk/Attachment/37735. Upon information and belief, Top Victory is in the business of distributing TVs and monitors, including under the AOC and Envision brands.

7.     Upon information and belief, Defendant Top Victory International Limited ("Top Victory Int'l") is a corporation organized under the laws of the British Virgin Islands, with its

principal place of business located at C/O Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands. Top Victory Int'l is a directly and wholly-owned subsidiary of TPV. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, p. 131, http://api.aconnect.com.hk/Attachment/37735. Upon information and belief, Top Victory Int'l is in the business of distributing TVs and monitors, including under the AOC and Envision brands.

8.      TPV Display Technology (Wuhan) Co. ("TPV Wuhan") is a company organized under the laws of PRC, with its principal place of business at Unique No. 11 of Zhuankou Development, District of Economic Technological Development Zone, Wuhan City, China. It is a subsidiary of TPV Technology Limited. Upon information and belief, TPV Wuhan is in the business of manufacturing and distributing display devices, such as monitors and digital televisions under at least the Envision and AOC brands.

9.      TPV Display Technology (Beihai) Co. ("TPV Beihai") is a company organized under the laws of PRC, with its principal place of business at Beihai Industrial Park, Taiwan Road, northeast of Jilin Road (inside China Electronics Beihai Industrial Park) Beihai; Guangxi; Postal Code: 536000. Upon information and belief, it is a subsidiary of TPV Technology Limited. Upon information and belief, TPV Beihai is in the business of manufacturing and distributing display devices, such as monitors and digital televisions under at least the Envision and AOC brands.

10.     TPV Electronics (Fujian) Co., Ltd. ("TPV Fujian") is a company organized under the laws of PRC, with its principal place of business at Shangzheng Yuanhong Road, Fuqing City, Fujian Province, China. Upon information and belief, it is a subsidiary of TPV Technology Limited. Upon information and belief, TPV Fujian is in the business of manufacturing and distributing display devices, such as monitors and digital televisions under at least Envision and AOC brands.

11.    TPV Technology (Ningbo) Co., Ltd. ("TPV Ningbo") is a company organized under the laws of PRC, with its principal place of business at Bldg. 6 No. 12 Chuangye Rd. Free Beilun District Zj 315800 China 86815666. TPV Ningbo is a subsidiary of TPV Technology Limited. Upon information and belief, TPV Ningbo is in the business of manufacturing and distributing display devices, such as monitors and digital televisions under at least Envision and AOC brands.

12.    Upon information and belief, TPV has wholly-owned and controlled subsidiaries operating and doing business in the United States. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, pp. 131-32, http://api.aconnect.com.hk/Attachment/37735. These subsidiaries include at least Trend Smart America, Ltd. ("Trend Smart"), which is a California corporation with its principal place of business at 2 S. Pointe Dr., Lake Forest, California, and TPV International (USA), Inc. ("TPV USA"). TPV USA is a California corporation registered to do business in Texas, with its principal place of business at 3737 Executive Center Dr. #261, Austin, Texas. TPV USA is indirectly wholly-owned by TPV.

13.    Upon information and belief, Envision Peripherals, Inc. ("Envision," a California corporation) operates in the United States on behalf of TPV and its subsidiaries to bring to distributors, customers, and end user consumers "AOC [branded] monitors in North America." *See Envision Peripherals, Inc.*, LINKEDIN, https://www.linkedin.com/company/envision-peripherals-inc/about/. Envision identifies itself on LinkedIn as a "variable interest entity of TPV." TPV has also identified Envision as an "associate" of TPV in its annual reports.

14.    TPV further lists Defendant Top Victory Int'l as a North American subsidiary of TPV. In 1999, AOC International assigned the U.S. Trademark Registration of the mark "AOC" to Top Victory Int'l.

15.     TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Trend Smart, TPV USA, and Envision, along other subsidiaries and/or associates of TPV, operate collectively as the "TPV Group" to principally engage in the "manufacture and sales of personal computer monitors and televisions globally….[including operating under] its own brands 'AOC', 'Envision,'" among other brands. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV Technology Limited June 8, 2018, p. 29, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316 7990_en .pdf.

16.     In April of 2012, Defendants Panda LCD and Top Victory established a joint venture named "CEC Panda Flat Panel Display Technology Co., Ltd." (the "Joint Venture," also referred to herein as Defendant Panda FPD), to manufacture and sell TFT-LCD panels, color filters, and LCD modules (the "Panda LCD Products"), to conduct research and development related to the Panda LCD Products, and to provide after-sales and customer-related services for the Joint Venture. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 6-8, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316 7990_en .pdf. Panda LCD manufactures and provides the Panda LCD Products via Panda FPD to Top Victory pursuant to a "Panda LCD Procurement Agreement." *Id*.

17.     Upon information and belief, the listing rules of the Hong Kong stock exchange require Defendant TPV to disclose certain transactions between Defendant Top Victory and Defendant Panda LCD. Under the listing rules, those parties are considered "connected persons," because Panda LCD is a subsidiary of CEC and CEC is the ultimate controlling shareholder of

TPV, Top Victory's parent. Under the listing rules, therefore, sales of the Panda LCD Products to Top Victory pursuant to the Panda LCD Procurement Agreement are regulated as "connected transactions," indicating that such sales are for the mutual benefit of the transacting parties. Pursuant to a supplemental investment agreement, TPV reported that all the rights and obligations of Panda LCD in the Joint Venture were taken up by Defendant Nanjing Electronics Information Industrial Corporation ("CEC Panda"). In May of 2018, Top Victory exercised an option (the "Put Option") to require CEC Panda (as the successor of Panda LCD in the Joint Venture) to acquire Top Victory's stake in the Joint Venture.

18.    Despite divesting its interest in the Joint Venture in 2018, TPV reports that Panda LCD continues to supply the Panda LCD Products to Top Victory pursuant to a renewal of the Panda LCD Procurement Agreement, which is effective at least through December of 2020. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, p. 32, *available at* http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000013167990_en .pdf. Top Victory distributes televisions and monitors incorporating TFT-LCD panels manufactured by Panda LCD in the United States, including the Eastern District of Texas. Top Victory distributes and sells such products under at least its "AOC" brand, which are sold in many online and retail stores in the United States. By virtue of connected transactions with Top Victory, Defendants do business in the State of Texas and in the Eastern District of Texas.

19.    Upon information and belief, CEC is the ultimate controlling shareholder of Panda LCD. Panda LCD is "principally engaged in the manufacture of LCD panels and displays," and is part of a related group of parent companies, subsidiaries, and close associates (the "Panda Group") which includes CEC Panda and Panda FPD and operates under the umbrella of Panda Electronics

Group Limited ("PEGL"). PEGL is the controlling shareholder of Panda LCD, and NEICC holds 100% equity interest of PEGL.

20.     In addition to providing monitors and TVs in the U.S. under the AOC and Envision brands, the Panda Group including Defendants Panda LCD and CEC Panda, upon information and belief, also operates in the U.S. via its associate, business partner, and/or customer Sceptre, Inc. ("Sceptre"), which is a California corporation with its principal place of business 16800 Gale Ave City of Industry, CA 91745. Sceptre provides wholesale distribution of the Panda Groups' LCD panels and displays in the U.S., and such products are incorporated into Sceptre-branded monitors and TVs provided to U.S. customers and end user consumers in the U.S.

21.     Upon information and belief, Defendants Panda LCD and CEC Panda operate in the U.S., as part of the Panda Group, via at least its business partner and/or customer Curtis International Ltd. (a Canadian company, "Curtis"). Curtis manufactures, distributes, and sells consumer electronic products, including TVs and monitors utilizing TFT-LCDs, in the United States. *See Curtis International Ltd*, LINKEDIN, https://www.linkedin.com/company/curtis-international-ltd. Curtis' TVs and monitors are marketed under at least the "RCA" brand in the U.S. *Id*. These RCA-branded products incorporate LCD products manufactured and designed for Curtis by Defendants Panda LCD and CEC Panda. These RCA-branded products also incorporate liquid crystal modules (LCMs) manufactured and designed by Sichuan Changhong Electric Co., Ltd. and Guangdong Changhong Electronics Co., Ltd. (jointly referred to as "Changhong") and/or their parent and subsidiary companies. Defendants Panda LCD and CEC Panda manufacture, import, distribute, sell, offer to sale RCA-branded TVs that incorporate Defendants' LCD products and Changhong's LCM products to and for Curtis as part of agreements, partnerships, and/or customer relationship between Defendants Panda LCD and CEC Panda and Curtis. *See Our*

*Products*, CURTIS INTERNATIONAL LTD, https://www.curtisint.com/products/. Curtis provides wholesale distribution of Defendants' Panda LCD and CEC Panda LCD panels and displays in the U.S., and such products are incorporated into RCA-branded monitors and TVs provided to U.S. customers and end user consumers in the U.S.

22.    Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' LCD products with distributors, associates, business partners, and customers operating in and maintaining a significant business presence in the U.S., such as Envision, Curtis, and Sceptre and/or TPV's U.S.-based subsidiaries TPV USA and Trend Smart, Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

23.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

24.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25.    Upon information and belief, Defendant Panda LCD is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Panda LCD operates within the CEC Group to manufacture and supply LCD products

such as TVs and computer monitors under at least the AOC, Envision, RCA, and Sceptre brands for import, distribution, and sale in the U.S. market.

26.     This Court has personal jurisdiction over Panda LCD, directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, business partners, distributors, importers, customers, subsidiaries, and/or consumers, such as Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, Sceptre, Curtis, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA. Panda LCD, via at least the Joint Venture and other connected transactions with Defendants in the TPV Group and via the activities of U.S.-based Sceptre, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV Technology and its subsidiaries and associates. Panda LCD imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Panda LCD would not offend traditional notions of fair play and substantial justice.

27.     In the alternative, the Court has personal jurisdiction over Panda LCD under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Panda LCD is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Panda LCD is consistent with the U.S. Constitution.

28.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Panda LCD is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

29.     Upon information and belief, Panda LCD has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

30.     Upon information and belief, Defendant CEC Panda is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, CEC Panda operates within the CEC Group to manufacture and supply LCD products such as TVs and computer monitors under at least the AOC, Envision, RCA, and Sceptre brands for import, distribution, and sale in the U.S. market.

31.     This Court has personal jurisdiction over Defendant CEC Panda, directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, business partners, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision,

Sceptre, Curtis, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because CEC Panda, via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the TPV Group and via the activities of U.S.-based Sceptre, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV Technology and its subsidiaries and associates. CEC Panda imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over CEC Panda would not offend traditional notions of fair play and substantial justice.

32.     In the alternative, the Court has personal jurisdiction over CEC Panda under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, CEC Panda is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over CEC Panda is consistent with the U.S. Constitution.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, CEC Panda is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

34.     Upon information and belief, CEC Panda has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

35.     Upon information and belief, Defendant Panda FPD is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm

Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Panda FPD operates within the CEC Group to manufacture and supply LCD products such as TVs and computer monitors under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

36.     This Court has personal jurisdiction over Defendant Panda FPD, directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because Panda FPD, via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the TPV Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV Technology and its subsidiaries and associates. Panda FPD imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Panda FPD would not offend traditional notions of fair play and substantial justice.

37.     In the alternative, the Court has personal jurisdiction over Panda FPD under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Panda FPD is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Panda FPD is consistent with the U.S. Constitution.

38.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Panda FPD is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

39.     Upon information and belief, Panda FPD has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

40.     Upon information and belief, Defendant TPV is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, TPV controls and operates within the TPV Group to manufacture and supply LCD products such as TVs and computer monitors for the CEC Group, which provides these products under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

41.     This Court has personal jurisdiction over Defendant TPV directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors,

importers, customers, subsidiaries, and/or consumers, such as Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because TPV via at least its interest and participation in the Joint Venture and other connected transactions with the Defendants in the CEC Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV and its subsidiaries and associates. TPV imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over TPV would not offend traditional notions of fair play and substantial justice.

42.    In the alternative, the Court has personal jurisdiction over TPV under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, TPV is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over TPV is consistent with the U.S. Constitution.

43.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, TPV is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

44.    Upon information and belief, TPV has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

45.     Upon information and belief, Defendant Top Victory Int'l is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Top Victory Int'l operates within the TPV Group to manufacture and supply LCD products such as TVs and computer monitors for the CEC Group, which provides these products under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

46.     This Court has personal jurisdiction over Defendant Top Victory Int'l directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because Top Victory Int'l via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the CEC Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV and its subsidiaries and associates. Top Victory Int'l imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells

them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Top Victory Int'l would not offend traditional notions of fair play and substantial justice.

47.    In the alternative, the Court has personal jurisdiction over Top Victory Int'l under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Top Victory Int'l is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Top Victory Int'l is consistent with the U.S. Constitution.

48.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Top Victory Int'l is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

49.    Upon information and belief, Top Victory Int'l has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

50.    Upon information and belief, Defendant Top Victory is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Top Victory operates within the TPV Group to manufacture and supply LCD products

such as TVs and computer monitors for the CEC Group, which provides these products under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

51.    This Court has personal jurisdiction over Defendant Top Victory directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because Top Victory via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the CEC Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and tested outside the U.S. by TPV and its subsidiaries and associates. Top Victory imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Top Victory would not offend traditional notions of fair play and substantial justice.

52.    In the alternative, the Court has personal jurisdiction over Top Victory under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Top Victory is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Top Victory is consistent with the U.S. Constitution.

53.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Top Victory is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

54.     Upon information and belief, Top Victory has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

55.     Upon information and belief, Defendants along with their parents, subsidiaries, close associates and other related companies, including business partners, distributors and customers of Defendants having a significant U.S. business presence, including Trend Smart, TPV USA, and Sceptre have operated as agents of one another and vicariously as arms of the same business group to work in concert together and enter into agreements that are nearer than arm's length to conduct business in the United States, including in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F.Supp.2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

56.     Upon information and belief, Defendants along with their parents, subsidiaries, and other related companies (i.e., associates, business partners, distributors and customers which have a significant business presence in the U.S.) engaged and continue to engage in a concerted effort to import, distribute, sell, offer to sell, and use infringing products in the United States, including monitors and TVs marketed under the AOC, Envision, RCA, and Scepter brands. For example,

since at least 2012, Defendants in the Panda Group along with their parents, subsidiaries, and other related companies have carried out a series of connected transactions with the TPV Group in furtherance of its mutual business interests and goals, including, but not limited to, 1) establishing the Joint Venture with Top Victory to manufacture and sell the Panda LCD Products in the United States; 2) entering into a "Panda LCD Procurement Agreement" and subsequent with Top Victory for the purchase of "LCD Panels and related products"; and 3) continuing to supply the TPV Group with LCD panels from other factories operated by the Panda LCD Group. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 6-8, 29, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010013167990_en.pdf.

57.    Defendants have placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. For example, TPV (Top Victory's parent) touts that its sales revenue from the North American market was 2.1 billion USD in 2018 and 2.3 billion USD in 2017, which was about one-quarter of its worldwide sales revenue. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, p. 118, http://api.aconnect.com.hk/Attachment/37735. Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly and via their U.S. based subsidiaries and associates have imported, offered for sale, advertised, and sold TPV products including AOC monitors, such as model nos. 27B1H and E2270SWHN, utilizing TPV LCD panels such as TPM270WF1 and TPM215HW01, respectively. As part of the Joint Venture and other connected transactions, such

as the continuing Panda LCD Procurement Agreement, Top Victory on behalf and for the mutual benefit of Panda LCD and other Defendants imported, offered for sale, advertised, and sold Panda LCD Products including Panda TFT-LCD model nos. LC215DTCA (incorporated in AOC monitor E2270SWHN) and LC270LG1L01 (incorporated in AOC monitor 27B1H). Such Panda LCD Products and TPV products were sold in retail stores, both brick and mortar and online, within this judicial district and in Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

58.     Defendants Panda LCD and CEC Panda have also imported, offered for sale, advertised, and sold, via its associate Sceptre Inc. and business partner/customer Curtis, among other distributors and customers, Sceptre-branded  and RCA-branded products, including, but not limited to, Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50) and Panda LCD model no. SPWBR485C-001 V1.0 (incorporated in RCA TV Model No. RTRU5027-US). Such Sceptre-branded and RCA-branded products were sold in retail stores, both brick and mortar and online, within this judicial district and in Texas.

59.     Upon information and belief, Defendant Top Victory and its parent Defendant TPV, pursuant to the Joint Venture and the continuing Panda LCD Procurement Agreement, control TPV's subsidiaries and/or associates Trend Smart, TPV USA, Top Victory International, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, and Envision. Top Victory controls or otherwise directs and authorizes all activities of TPV's subsidiaries and/or associates, including the

subsidiaries and associates' using, offering for sale, selling, and/or importing accused products, their components, and/or products containing same that incorporate the fundamental technologies covered by the Asserted Patents. For example, Envision identifies itself on LinkedIn as a "variable interest entity of TPV." TPV has also identified Envision as an "associate" of TPV in its annual reports. A variable interest entity is "a legal business structure in which an investor has a controlling interest despite not having a majority of voting rights." TPV, therefore, has a controlling interest in its variable interest entity, Envision. Panda LCD and CEC Panda also control the U.S. infringing activities of its associate Sceptre, and their business partner and customer Curtis. These U.S.-based subsidiaries, distributors, business partners, customers, and/or associates of the TPV Group and the CEC Group give Defendants substantially the business advantages that they would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

## THE ASSERTED PATENTS AND TECHNOLOGY

60.    Upon information and belief, a significant portion of operating revenue of the Defendants is derived from the manufacture and sale of TFT-LCD flat panel displays, which are imported into the United States by the TPV Group and ultimately sold to U.S. consumers. For example, the TPV Group's main commodities include TVs and monitors, with 15 million TV units shipped and 26 million monitor units shipped in 2018. *See* 2018 TPV Annual Report, p. 4. In a 2018, TPV Group derived one-quarter of its revenue (about 9.1 billion USD) from sales to the North American market. *Id*. TPV also disclosed that it projected to procurement caps of Panda LCD Products under the Panda LCD Procurement Agreement were expected to increase from 750 million USD to 1.8 billion USD.

61.     The Asserted Patents cover TFT-LCD TVs and monitors, their components, including infringing TFT-LCD panels and controllers made by Defendants and incorporated into products of TPV, and processes related to the same (referred to as the "Accused Panels"). Examples of a Defendants' Accused Panels are Panda LCD model no. LC215DTCA (incorporated in AOC E2270SWHN), Panda LCD model no. LC270LG1L01 (incorporated in AOC 27B1H), Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50), Panda LCD model no. SPWBR485C-001 V1.0 (incorporated in RCA TV Model No. RTRU5027-US), TPV LCD Panel model no. TPM270WF1 (incorporated in  AOC 27B1H), TPV LCD panel model no. TPM215HW01 (incorporated in AOC E2270SWHN), and Realtek RTD-series controllers model nos. RTD2513A and RTD2483BR (incorporated into AOC 27B1H and E2270SWHN, respectively). For example, the labels for Panda LCD model no. LC215DTCA and for the TPV product, AOC E2270SWHN, are shown below:





62.    The labels for Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50) are shown below:







63.    Typically, a TFT-LCD has the following structure shown below, comprising of a backlight, a TFT/circuitry layer, a liquid crystal layer, and a color filter:



64.    Each TFT acts as a switch that operates its respective individual pixel using the circuity lines. In that way, the pixels can be turned on and off to create an image on an LCD by allowing or preventing light to pass through. The individual pixels are more apparent when a color filter layer overlays the circuits as shown in the image below for the Accused Panel, Panda LCD model no. LC215DTCA.



**Color Filter Layer**

65. The Accused Panels have an active matrix type liquid crystal display device with two opposing insulating substrates and liquid crystal in-between, as illustrated below in reference to Panda LCD model no. LC215DTCA.



66. As shown below, the TFT-LCD Accused Panel contains a first substrate with a gate line, a common line parallel to the gate line.



67. The Accused Panel has a data line intersecting the gate line with a gate insulating film between.



68.     The Accused Panel also has a first interlayer film coating the data line and a first orientation film coating the first interlayer insulating film, as shown below.



69.    As shown below, the Accused Panel has a second substrate (e.g., color filter layer) with a light shielding film (e.g., black matrix) opposite to a gate line and a second interlayer insulating film coating the light shielding film.



70.    The Accused Panel shown below has a columnar spacer located above the gate line apart from the intersection of the gate and data lines.



71.    The Asserted Patents also cover Accused Panels, such as Panda TFT-LCD panel

model no. LC215DTCA, that include a seal along the periphery of a liquid crystal layer, as shown

below.



72.    The Accused Panel shown below has a spacer in the seal to make a gap between the array substrate and the opposing substrate constant.



73.    The Accused Panel also has a leveling layer formed on the switching element array. As shown below, the leveling layer has an opening area and a thin region at the seal.



74.    The Accused Panel also includes, as shown below, a surge protection circuit having a plurality of floating-gate field effect transistors, each having a channel capacitance and including a floating gate electrode, a source electrode, and a drain electrode.



75.    The Asserted Patents also cover AOC monitors, for example AOC model nos. E2270SWHN and 27B1H, that utilize Realtek display controllers (e.g., RTD2483BR and RTD2513A) with a driving circuit for the LCD panel, as shown below.



76.     Upon information and belief, the RTD2483BR controller is expected to have features and components similar (or identical) to other as other Realtek RTD-series display controllers, including the RTD2545L Series of controllers. The driving circuit of the RTD2545L has a gamma compensating circuit in a display controller block, as shown below.



77.     The driving circuit of the RTD2545L applies a gamma compensation to a red, blue, and green ("RGB") video signal.



78.    Reference voltages are supplied to the gamma compensating circuits.



79.    As shown below regarding the SPCA6350A chip, a data electrode driving circuit (red box) is present for driving the compensated red, green, and blue video signals.



80.   The Asserted Patents also cover AOC monitors that utilize a Realtek display controller with a clamping circuit for an LCD, as shown below in the Realtek RTD2523/2513 which  is expected to have similar or identical features as the RTD2483BR controller.

| Address: EC | | ADC Differential Mode | Default: 08h |
|---|---|---|---|
| Bit | Mode | Function | |
| 7 | R/W | ADC Dual Input Selection 0: Channel 0 1: Channel 1 | |
| 6 | R/W | ADC Differential Input Selection 0: Single-ended 1: Differential | |
| 5:3 | R/W | ADC Clamp Voltage Option | |
| 2 | R/W | ADC Red Channel Clamp Selection 0: To ground 1: To mid-scale | |
| 1 | R/W | ADC Green Channel Clamp Selection 0: To ground 1: To mid-scale | |
| 0 | R/W | ADC Blue Channel Clamp Selection 0: To ground 1: To mid-scale | |
| Note: 0xEC[7] must be 0. | | | |

81.   The clamping circuit of the Accused Panels have a plurality of clamp units for receiving input signals after a DC bias is deleted.

| Address: E7 | | ADC_REG_CUR_L | Default: 69h |
|---|---|---|---|
| Bit | Mode | Function | |
| 7:6 | R/W | ADC master bias current option: vicm, vocm buffer op bias<br>00 45u<br>01 60u<br>10 75u<br>11 90u | |
| 5:4 | R/W | ADC master bias voltage option: vicm voltage<br>00 0.98V<br>01 1.08V<br>10 1.20V<br>11 1.32V | |
| 3:2 | R/W | ADC master bias voltage option: vocm voltage<br>00 1.44V<br>01 1.56V<br>10 1.68V<br>11 1.80V | |
| 1:0 | R/W | ADC master bias current option: ADC op bias<br>00 45u<br>01 60u<br>10 75u<br>11 90u | |

82.    A predetermined clamping voltage is added to each color signal corresponding to a pedestal level (e.g., back porch).



83.    The clamping circuit has gamma-correction circuits connected to the clamp units.



**84.** The clamp units supply a clamping voltage in response to a first control signal (e.g., setting a clamp selection).

| Address: EC | ADC Differential Mode | Default: 08h |
|---|---|---|
| **Bit** | **Mode** | **Function** |
| 7 | R/W | **ADC Dual Input Selection**<br>0: Channel 0<br>1: Channel 1 |
| 6 | R/W | **ADC Differential Input Selection**<br>0: Single-ended<br>1: Differential |
| 5:3 | R/W | **ADC Clamp Voltage Option** |
| 2 | R/W | **ADC Red Channel Clamp Selection**<br>0: To ground<br>1: To mid-scale |
| 1 | R/W | **ADC Green Channel Clamp Selection**<br>0: To ground<br>1: To mid-scale |
| 0 | R/W | **ADC Blue Channel Clamp Selection**<br>0: To ground<br>1: To mid-scale |

Note: 0xEC[7] must be 0.

**85.** The clamp units generate a clamped color signal with a black level coinciding with a characteristic of the gamma-correction circuit.

| Address: E3 | REDOFST | |
|---|---|---|
| Bit | Mode | Function |
| 7:0 | R/W | **Red Channel Clamp Offset**<br>FFh : clamp Vin+128*(Vfs/256) in back porch period as code 00h.<br>80h : clamp Vin in back porch period as code 00h.<br>00h : clamp Vin-128*(Vfs/256) in back porch as code 00h. |

| Address: E4 | GRNOFST | |
|---|---|---|
| Bit | Mode | Function |
| 7:0 | R/W | **Green Channel Clamp Offset**<br>FFh : clamp Vin+128*(Vfs/256) in back porch period as code 00h.<br>80h : clamp Vin in back porch period as code 00h.<br>00h : clamp Vin-128*(Vfs/256) in back porch as code 00h. |

| Address: E5 | BLUOFST | |
|---|---|---|
| Bit | Mode | Function |
| 7:0 | R/W | **Blue Channel Clamp Offset**<br>FFh : clamp Vin+128*(Vfs/256) in back porch period as code 00h.<br>80h : clamp Vin in back porch period as code 00h.<br>00h : clamp Vin-128*(Vfs/256) in back porch as code 00h. |

**Vfs:** Input full-scale voltage *depends on REDGAIN setting*, **Vin:** Input channel signal, **Vbp:** Vin in back porch period
This register is used to adjust the input clamp level. One LSB offset (=Vfs/256) equals one LSB change in ADC output.
Increasing the offset setting results in less brightness.  Be careful that input full-scale voltage depends on GAIN setting, so the LSB offset step will be increased when increasing the GAIN setting.

86.     Clamping voltage is added to the pedestal level in a predetermined timing of the input color signal in response to a second control signal (e.g., setting a second clamp selection).

Timing Information

**Clamping Signal Control**

| Address: 55 | CLAMP_START (Clamp Signal Output Start) | |
|---|---|---|
| Bit | Mode | Function |
| 7:0 | R/W | **Start of Output Clamp Signal Pulse:**<br>Determine the number of input double-pixel between the trailing edge of input HSYNC and the start of the output CLAMP signal. |

| Address: 56 | CLAMP_END (Clamp Signal Output End) | |
|---|---|---|
| Bit | Mode | Function |
| 7:0 | R/W | **End of Output Clamp Signal Pulse:**<br>Determine the number of input double-pixel between the trailing edge of input HSYNC and the end of the output CLAMP signal. |

87.     The Asserted Patents also cover Accused Panels, such as model no. LC270LF1L01, that include a substrate with a spacer structure. As shown below, the spacer structure includes two types of spacers with one that is shorter than the other.



88.     The Asserted Patents also cover Accused Panels such as AOC monitor model nos. 27B1H (shown below) and E2270SWHN, which utilize TPV LCD panel model nos. TPM270WF1 and TPM215HW01, respectively.



89.     These Accused Panels include a backlight unit with a frame surrounding an opening, as shown below for .



90.    The backlight unit has a conductive plate positioned in the opening of the frame, which has surfaces adjacent to the two frame surfaces (i.e., first and second surfaces), as shown and illustrated below.



91.    The backlight unit of the Accused Panel has a diffusion sheet fastened to the first surface of the frame and covers at least a portion of the first surfaces of the frame and light conductive plate.



92.    The LED backlight has a light reflective sheet fastened to the second surface of the frame and covers at least a portion of the second surface of the frame and light conductive plate.



93.    The diffusion sheet and the light reflective sheet cooperate to fasten the light conductive plate within the frame.



94.    The Asserted Patents also cover Accused Panels such as AOC monitor model no. 27B1H, which utilizes TPV LCD panel model no. TPM270WF1. The AOC monitor has a TPV backlight with an optical guide plate enclosed in a frame, as shown below.



95.    The optical guide plate has a body made of a transparent material, and includes an incident surface, a granulated diffusion surface, and a light output surface.



96.    The optical guide plate of the TPV LCD panel model no. TPM270WF1 has projections on the granulated diffusion surface with peaks between approximately 10-20 microns, which are higher than the height of the granulations of the granulation diffusion surface, as illustrated below.



97.     The optical guide plate has a reflecting sheet supported by the projections, which forms an air layer between the reflecting sheet and the granulated surface.



98.     The optical guide plate of the TPV LCD panel model no. TPM270WF1 has a light source (e.g., an LED strip) opposed to the incident surface.



99.    The Accused Panels also provide electric apparatuses that have a frame member that are covered by the Asserted Patents. For example, in model no. CC495PU1L (incorporated into Sceptre TV model no. H50), the TV has a screw hole in the frame member.



100.    The TV has a liquid crystal module with an LCD panel in the front and a frame in the back. The module is mounted to the frame member by way of a threaded screw hole which is in alignment with the hole in the frame.



101.    There is a screw for attaching the frame member to the liquid crystal module from the back and through the hole in the frame member and the threaded screw hole in the back of the frame of the liquid crystal module.



## **COUNT I**

### (INFRINGEMENT OF U.S. PATENT NO. 7,046,327)

102.    Plaintiff incorporates paragraphs 1 through 101 herein by reference.

103.    VPV is the assignee of the '327 patent, entitled "Liquid crystal display device including columnar spacer above gate line," with ownership of all substantial rights in the '327 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

104.    The '327 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '327 patent issued from U.S. Patent Application No. 10/833,318.

105.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more  claims of the '327 patent in this judicial district and elsewhere in Texas and the United States.

106.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010 0013167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that

incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

107.    Defendants directly infringe the '327 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '327 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to their alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that the Defendants deliver the Accused Panels outside of the United States, Defendants do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '327 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '327 patent through their direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International— and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants Panda LCD and CEC Panda also directly infringe the '327 patent through its direct involvement in the activities of Sceptre on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and offering for

sale Accused Panels using the Sceptre and RCA brand, respectively, directly to Sceptre and Curtis, and Sceptre and Curtis importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, TPV, TPV's subsidiaries and associates, Curtis, and Sceptre conduct activities that constitutes direct infringement of the '327 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV, TPV's subsidiaries and associates, Curtis, and Sceptre (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

108.    For example, Defendants infringe claim 1 of the '327 patent via the Accused Panels such as Panda TFT-LCD model nos. LC215DTCA (incorporated in AOC monitor E2270SWHN), CC495PU1L (incorporated into Sceptre TV model no. H50), and Panda LCD Model No. SPWBR485C-001 V1.0 (incorporated into RCA TV Model No. RTRU5027-US). Those Accused Panels include a "liquid crystal display device including" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a first substrate, a second substrate, and a liquid crystal layer sandwiched between the first and second substrates, the device comprising, on the first substrate: a gate line; a common line parallel to the gate line; a data line intersecting the gate line while sandwiching a gate insulating film on the gate line therebetween; a first interlayer insulating film coating the data line; and a first orientation film

coating the first interlayer insulating film, and the device comprising, on the second substrate: a light shielding film opposite to the gate line; a second interlayer insulating film coating the light shielding film; a columnar spacer located above the gate line apart from an intersection of the gate line and the data line and provided on the second interlayer insulating film; and a second orientation film coating the second interlayer insulating film and the columnar spacer, wherein a center of a top of the columnar spacer is shifted from above a widthwise center of the gate line toward above the common line, and the top of the columnar spacer partially overruns from above the gate line toward above the common line when viewed from the above, the top being directed to the first substrate.

109.    At a minimum, Defendants have known of the '327 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '327 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '327 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '327 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

110.    Upon information and belief, since at least the above-mentioned date when Defendants were on notice of their infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '327 patent to directly infringe one or more claims of the '327 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants do so with knowledge, or with

willful blindness of the fact, that the induced acts constitute infringement of the '327 patent. Upon information and belief, Defendants intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

111. Upon information and belief, despite having knowledge of the '327 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '327 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '327 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

112. VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV

for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 6,549,259)

113.    Plaintiff incorporates paragraphs 1 through 112 herein by reference.

114.    VPV is the assignee of the '259 patent, entitled "Liquid crystal display panel and fabrication method of the same," with ownership of all substantial rights in the '259 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

115.    The '259 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '259 patent issued from U.S. Patent Application No. 09/780,382.

116.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '259 patent in this judicial district and elsewhere in Texas and the United States.

117.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/2018060716470100013167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display

industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

118.    Defendants directly infringe the '259 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '259 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '259 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '259 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants Defendants Panda

LCD and CEC Panda also directly infringe the '259 patent through its direct involvement in the activities of Sceptre on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and offering for sale Accused Panels using the Sceptre and RCA brand, respectively, directly to Sceptre and Curtis, and Sceptre and Curtis importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, TPV, TPV's subsidiaries and associates, Curtis, and Sceptre conduct activities that constitutes direct infringement of the '259 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV, TPV's subsidiaries and associates, Curtis, and Sceptre (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

119.    For example, Defendants infringe claim 1 of the '259 patent via the Accused Panels such as Panda TFT-LCD model no. LC215DTCA (incorporated in AOC E2270SWHN), Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50), Panda LCD Model No. LC270LF1L01 (incorporated in AOC model no. 27B1H), and Panda LCD Model No. SPWBR485C-001 V1.0 (incorporated into RCA TV Model No. RTRU5027-US). Those Accused Panels include a "liquid crystal display panel comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include an array substrate having a switching element array; an opposing substrate opposing to said array

substrate; a liquid crystal layer disposed between said array substrate and said opposing substrate; a seal member sealing said liquid crystal layer within said display panel; a spacer disposed within said seal member so as to make a gap between said array substrate and said opposing substrate constant; and a leveling layer formed on said switching element array, said leveling layer being provided with one of an opening area and a thin region at a seal area of said seal member, said thin region being thinner than thickness of said leveling layer on each switching element of said switching element array.

120.    Defendants further infringe the '259 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '259 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

121.    At a minimum, Defendants have known of the '259 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '259 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '259 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '259 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

122.    Upon information and belief, since at least the above-mentioned date when Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that

import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '259 patent to directly infringe one or more claims of the '259 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '259 patent. Upon information and belief, Defendants intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

123. Upon information and belief, despite having knowledge of the '259 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '259 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '259 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical

infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

124.    VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 6,812,528)

125.    Plaintiff incorporates paragraphs 1 through 124 herein by reference.

126.    VPV is the assignee of the '528 patent, entitled "Surge protection circuit for semiconductor devices," with ownership of all substantial rights in the '528 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

127.    The '528 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '528 patent issued from U.S. Patent Application No. 09/874,296.

128.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '528 patent in this judicial district and elsewhere in Texas and the United States.

129.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays."

*See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001 3167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

130.     Defendants directly infringe the '528 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '528 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '528 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '528 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants.

Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants Panda LCD and CEC Panda also directly infringe the '528 patent through its direct involvement in the activities of Curtis on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and offering for sale Accused Panels using the RCA brand, respectively, directly to Curtis, and Curtis importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, TPV, TPV's subsidiaries and associates, and Curtis conduct activities that constitutes direct infringement of the '528 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV, TPV's subsidiaries and associates, and Curtis (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

131.    For example, Defendants infringe claim 23 of the '528 patent via Panda LCD's Accused Panels such as Panda TFT-LCD model no. LC215DTCA (incorporated in AOC E2270SWHN), LC270LG1L01 (incorporated in AOC 27B1H), and Panda LCD Model No. SPWBR485C-001 V1.0 (incorporated in RCA TV Model No. RTRU5027-US). Those Accused Panels include a "surge protection circuit for a semiconductor display panel, comprising" each of

the limitations of claim 23. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a plurality of vertical signal lines; a plurality of horizontal signal lines intersecting said vertical signal lines; and a plurality of floating-gate field effect transistors, each having a channel capacitance and including a floating gate electrode, a source electrode and a drain electrode, said source and drain electrodes of each of said transistors being respectively connected to said vertical signal lines, each of said transistors being responsive to the respective vertical signal line being subjected to a surge potential for developing a voltage on said channel capacitance sufficient to turn on said floating-gate field effect transistor and establish a low-impedance path to ground.

132.    At a minimum, Defendants have known of the '528 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '528 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '528 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '528 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

133.    Upon information and belief, since at least the above-mentioned date when Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '528 patent to directly infringe one or more claims of the '528 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice

provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '528 patent. Upon information and belief, Defendants intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

134. Upon information and belief, despite having knowledge of the '528 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '528 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '528 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

135. VPV has been damaged as a result of Defendants' infringing conduct described

in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 6,870,593)

136.    Plaintiff incorporates paragraphs 1 through 135 herein by reference.

137.    VPV is the assignee of the '593 patent, entitled "Liquid Crystal Display Cell with Improved Spacer structure," with ownership of all substantial rights in the '593 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

138.    The '593 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '593 patent issued from U.S. Patent Application No. 10/242,604.

139.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '593 patent in this judicial district and elsewhere in Texas and the United States.

140.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10,

http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000131679 90_en
.pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display
industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed
and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD
Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that
incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale,
and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

141.    Defendants directly infringe the '593 patent via 35 U.S.C. § 271(a) by making,
offering for sale, selling, and/or importing those Accused Panels, their components, and/or
products containing same that incorporate the fundamental technologies covered by the '593 patent
to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers,
customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants
sell and make Accused Panels outside of the United States, deliver those products to its alter egos,
agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or
consumers in the United States, or in the case that they deliver the Accused Panels outside of the
United States they do so intending and/or knowing that those panels are destined for the United
States and/or designing those products for sale in the United States, thereby directly infringing the
'593 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*,
964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '593
patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart,
TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants.
Such direct infringement includes Defendants' selling and offering for sale the Accused Panels
directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International,

and Envision and Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants Panda LCD and CEC Panda also directly infringe the '593 patent through its direct involvement in the activities of Curtis on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and offering for sale Accused Panels using the RCA brand, respectively, directly to Curtis, and Curtis importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, TPV, TPV's subsidiaries and associates, and Curtis conduct activities that constitutes direct infringement of the '593 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV, TPV's subsidiaries and associates, and Curtis (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

142.    For example, Defendants infringe claim 1 of the '593 patent via the Accused Panels such as Panda TFT-LCD model no. LC215DTCA (incorporated in AOC monitor E2270SWHN) and Panda LCD Model No. SPWBR485C-001 V1.0 (incorporated into RCA TV Model No. RTRU5027-US). Those Accused Panels include a "[a] liquid crystal display cell including" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a first substrate, a second substrate, a liquid crystal layer interposed

between said first and second substrates; and a plurality of horizontal signal lines intersecting said vertical signal lines; and a spacer structure on said second substrate, and said spacer structure further including: at least a first type spacer having a first height, at least a second type spacer having a second height which is smaller than said first height, wherein said first type spacer comprises a first color filter layer over said second substrate, and a first column-shaped spacer over said first color filter layer, and said second type spacer comprises a second color filter layer over said second substrate, and a second column-shaped spacer over said second color filter layer, wherein said first and second color filter layers have the same thickness or height, while said first column-shaped spacer is larger in height than said second column-shaped spacer.

143.    At a minimum, Defendants have known of the '593 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '593 patent since November 12, 2018 when Defendant TPV was provided a presentation listing the patent as infringed by Defendants' products, and on August 27, 2019, when Defendant TPV was provided access to a data room containing claim charts, including for the '593 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '593 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

144.    Upon information and belief, since at least the above-mentioned date when Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '593 patent to directly infringe one or more claims of the '593 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice

provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '593 patent. Upon information and belief, Defendants intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

145. Upon information and belief, despite having knowledge of the '593 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '593 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '593 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

146.    VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 7,006,065)

147.    Plaintiff incorporates paragraphs 1 through 146 herein by reference.

148.    VPV is the assignee of the '065 patent, entitled "Gamma compensation method and circuit for color liquid crystal display," with ownership of all substantial rights in the '065 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

149.    The '065 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '065 patent issued from U.S. Patent Application No. 09/707,816.

150.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '065 patent in this judicial district and elsewhere in Texas and the United States.

151.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays."

*See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV Technology Limited, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316799 0_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

152.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '065 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, including controllers, and/or products containing same that incorporate the fundamental technologies covered by the '065 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group sell and make Accused Panels, including controllers for such panels, outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '065 patent. *See, e.g., Lake Cherokee Hard Drive*

*Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '065 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels, including controllers for such panels, directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group are vicariously liable for this infringing conduct of TPV's subsidiaries and associates (under both the alter ego and agency theories). As an example and upon information and belief, TPV and its subsidiaries and associates are essentially the same company and these Defendants have the right and ability to control TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

153.    For example, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group infringe claim 9 of the '065 patent via the Accused Panels such as AOC monitors, (e.g., model nos. 27B1H and E2270SWHN), utilizing Realtek RTD-series display controllers (e.g., Realtek controller model nos. RTD2513A and RTD2483BR). Those Accused Panels include a "driving circuit for a color liquid crystal display comprising" each of the limitations of claim 9. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those

limitations are met. For example, the Accused Panels include a first gamma compensating circuit for applying a gamma compensation only to a red video signal so as to be suitable only for a red transmittance characteristic for an independently applied voltage in said color liquid crystal display and for outputting only a compensated red video signal; a second gamma compensating circuit for applying a gamma compensation only to a green video signal so as to be suitable only for a green transmittance characteristic for an independently applied voltage in said color liquid crystal display and for outputting only a compensated green video signal; a third gamma compensating circuit for applying a gamma compensation only to a blue video signal so as to be suitable only for a blue transmittance characteristic for an independently applied voltage of said color liquid crystal display and for outputting only a compensated blue video signal; a reference voltage generating circuit for supplying respectively independently generated reference voltages to said first gamma compensating circuit, said second gamma compensating circuit and said third gamma compensating circuit; and a data electrode driving circuit for driving corresponding electrodes of said color liquid crystal display based on said compensated red video signal, said compensated green video signal and said compensated blue video signal, wherein said reference voltages are generated to provide optimum gamma compensation based on the luminosity characteristics of each color.

154.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group further infringe the '065 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '065 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or

products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

155.    At a minimum, Defendants have known of the '065 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '065 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '065 patent.

156.    Upon information and belief, since at least the above-mentioned date when Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo were on notice of its infringement, these Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '065 patent to directly infringe one or more claims of the '065 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '065 patent. Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused

Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

157. Upon information and belief, despite having knowledge of the '065 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '065 patent, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. These Defendants' infringing activities relative to the '065 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

158. VPV has been damaged as a result of Defendants' (TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo) infringing conduct described in this Count. These Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI

### (INFRINGEMENT OF U.S. PATENT NO. 6,657,619)

159. Plaintiff incorporates paragraphs 1 through 158 herein by reference.

160.    VPV is the assignee of the '619 patent, entitled "Clamping Circuit for Liquid Crystal Display Device," with ownership of all substantial rights in the '619 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

161.    The '619 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '619 patent issued from U.S. Patent Application No. 09/602,182.

162.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '619 patent in this judicial district and elsewhere in Texas and the United States.

163.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000113167990_en.pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that

incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

164.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '619 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, including controllers for such panels, and/or products containing same that incorporate the fundamental technologies covered by the '619 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '619 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '619 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels, including controllers for such panels, directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and

Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group are vicariously liable for this infringing conduct of TPV's subsidiaries and associates (under both the alter ego and agency theories). As an example and upon information and belief, TPV and its subsidiaries and associates are essentially the same company and these Defendants have the right and ability to control TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

165.    For example, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group infringe claim 1 of the '619 patent via the Accused Panels such as AOC monitors, (e.g., model nos. 27B1H and E2270SWHN), utilizing Realtek RTD-series display controllers (e.g., Realtek controller model nos. RTD2513A and RTD2483BR). Those Accused Panels include a "clamping circuit for a liquid crystal display device comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a plurality of clamp units for receiving a plurality of input color signals of an input picture signal after deleting a DC bias from each of said input color signals to produce a plurality of clamped color signals, respectively, by adding a predetermined clamping voltage corresponding to a pedestal level of said input picture signal to each of said input color signals; and a plurality of gamma-correction circuits connected to said clamp units for receiving said clamped color signals, respectively, and for performing a predetermined gamma correction and amplification on each of said clamped color signals to produce output color signals, respectively; each of said clamp units being provided with a clamping

portion for receiving said input color signal and a clamping voltage generating circuit for supplying a clamping voltage to said clamping portion so as to be controlled in response to an individual first control signal supplied thereto and generates said clamped color signal such that a black level of said clamped color signal coincides with a black level in an input/output characteristic of said gamma-correction circuit, and said clamping portion being supplied with said clamping voltage so as to add said clamping voltage to said pedestal level in a predetermined timing of said input color signal in response to a second control signal supplied thereto.

166.    At a minimum, Defendants have known of the '619 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '619 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '619 patent.

167.    Upon information and belief, since at least the above-mentioned date when Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo were on notice of its infringement, these Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '619 patent to directly infringe one or more claims of the '619 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '619 patent. Upon information and belief, Defendants TPV, Top Victory, Top

Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

168.    Upon information and belief, despite having knowledge of the '619 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '619 patent, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. These Defendants' infringing activities relative to the '619 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

169.     VPV has been damaged as a result of Defendants' (TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo) infringing conduct described in

this Count. These Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for these Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII

### (INFRINGEMENT OF U.S. PATENT NO. 7,593,070)

170.    Plaintiff incorporates paragraphs 1 through 169 herein by reference.

171.    VPV is the assignee of the '070 patent, entitled "Optical Unit and LCD Device Using the Optical Unit," with ownership of all substantial rights in the '070 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

172.    The '070 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '070 patent issued from U.S. Patent Application No. 11/984,403.

173.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '070 patent in this judicial district and elsewhere in Texas and the United States.

174.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000131679990_en

.pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

175.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '070 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '070 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '070 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '070 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV

USA, Top Victory International, and Envision on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group are vicariously liable for this infringing conduct of TPV's subsidiaries and associates (under both the alter ego and agency theories) because, as an example and upon information and belief, TPV and its subsidiaries and associates are essentially the same company and these Defendants have the right and ability to control TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

176.    For example, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group infringe claim 1 of the '070 patent via the Accused Panels such as AOC monitors, such as model nos. 27B1H and E2270SWHN, utilizing TPV LCD panels such as TPM270WF1 and TPM215HW01, respectively. Those Accused Panels include an "optical unit comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a frame surrounding an opening, the frame having a first surface and a second surface, placed directly across from the first surface of the frame; a light conductive plate positioned in the opening of the frame, the light conductive plate having a first surface adjacent the first surface of the frame and a second surface adjacent the second surface of the frame; a diffusion sheet fastened to the first

surface of the frame in a manner to cover at least a portion of the first surface of the frame and to cover the first surface of the light conductive plate; and a light reflective sheet fastened to the second surface of the frame in a manner to cover at least a portion of the second surface of the frame and to cover the second surface of the light conductive plate; wherein the diffusion sheet and the light reflective sheet cooperate to fasten the light conductive plate within the frame.

177.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo further infringe the '931 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '931 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

178.    At a minimum, Defendants have known of the '070 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '070 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '070 patent.

179.    Upon information and belief, since at least the above-mentioned date when Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo were on notice of its infringement, these Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '070 patent to directly infringe one or more claims of the

'070 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '070 patent. Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

180. Upon information and belief, despite having knowledge of the '070 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '070 patent, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. These Defendants' infringing activities relative to the '070 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

181.    VPV has been damaged as a result of Defendants' (TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo) infringing conduct described in this Count. These Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for these Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII

### (INFRINGEMENT OF U.S. PATENT NO. 6,486,931)

182.    Plaintiff incorporates paragraphs 1 through 181 herein by reference.

183.    VPV is the assignee of the '931 patent, entitled "LCD Optical Guide Plate With a Roughened Back Surface Having Projections That Support a Reflecting Sheet," with ownership of all substantial rights in the '931 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

184.    The '931 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '931 patent issued from U.S. Patent Application No. 09/592,914.

185.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '931 patent in this judicial district and elsewhere in Texas and the United States.

186.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to

design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000131167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. Id. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

187.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '931 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '931 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending

and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '931 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '931 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International—and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group are vicariously liable for this infringing conduct of TPV's subsidiaries and associates (under both the alter ego and agency theories) because, as an example and upon information and belief, TPV and its subsidiaries and associates are essentially the same company and these Defendants have the right and ability to control TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

188.    For example, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group infringe claim 1 of the '931 patent via the Accused Panels such as AOC monitors, such as model no. 27B1H which utilizes TPV LCD panel TPM270WF1. Those Accused Panels include an "optical guide plate used in a liquid crystal display comprising" each of the limitations of claim 1. The technology discussion

above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include an optical guide body formed of a transparent material, and including an incident surface, a granulated diffusion surface for scattering light components, a light output surface for radiating said light components therefrom and projections formed on said granulated diffusion surface, said projections having peaks with a height dimension of approximately 10 microns to 20 microns, which height dimension is greater than the dimensions of granulation of the granulated diffusion surface; a reflecting sheet supported by said peaks of said projections so as to form an air layer between the reflecting sheet and the granulated diffusion surface; and a light source opposed to said incident surface for supplying said light components to said optical guide body.

189.    At a minimum, Defendants have known of the '931 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '931 patent since November 12, 2018 when Defendant TPV was provided a presentation listing the patent as infringed by Defendants' products, and on August 19, 2019, when Defendant TPV was provided access to a data room containing claim charts, including for the '931 patent.

190.    Upon information and belief, since at least the above-mentioned date when Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo were on notice of its infringement, these Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '931 patent to directly infringe one or more claims of the '931 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least

the notice provided on the above-mentioned date, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '931 patent. Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. See, e.g., 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

191.    Upon information and belief, despite having knowledge of the '931 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '931 patent, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. These Defendants' infringing activities relative to the '931 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical

infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

192.    VPV has been damaged as a result of Defendants' (TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo) infringing conduct described in this Count. These Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for these Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JOINDER OF PARTIES

193.    VPV incorporates paragraphs 1 through 192 herein by reference.

194.    The alleged infringements set forth in Counts I through VIII arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the importing, distributing, making, using, offering for sale, and/or selling of the Accused Products made the subject of Counts I through IX.

195.    Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, the Accused Products.

196.    Thus, joinder of Panda LCD, CEC Panda, Panda FPD, TPV, Top Victory, and Top Victory Int'l TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo is proper in this litigation pursuant to 35 U.S.C. § 299(a).

## INJUNCTIVE RELIEF

197.    Plaintiff seeks preliminary and permanent injunctions as a result of Defendants' infringement of the Asserted Patents. Plaintiff is likely to succeed in showing that Defendants infringe the Asserted Patents. Because of that infringement, Plaintiff has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. For example, if Plaintiff must enforce a judgment against Defendants in the PRC,

Plaintiff will face a historically challenging burden in persuading courts in these jurisdictions to enforce a judgment from a U.S. court, likely preventing Plaintiff from obtaining any monetary damages from Defendants. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent or preliminary injunction.

## CONCLUSION

198.    Plaintiff VPV is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

199.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

200.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

201.    Plaintiff VPV respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

1.  A judgment that Defendants have infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.  A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;

3.   A preliminary and permanent injunction against Defendants, its subsidiaries, or anyone acting on its behalf from making, using, selling, offering to sell, or importing any products that infringe the Asserted Patents, and any other injunctive relief the Court deems just and equitable;

4.   A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

5.   A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

6.   A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

7.   Such other and further relief as the Court deems just and equitable.

Dated: April 1, 2020                    Respectfully submitted,

/s/Patrick J. Conroy
Patrick J. Conroy
Texas Bar No. 24012448
T. William Kennedy Jr.
Texas Bar No. 24055771
Terry A. Saad
Texas Bar No. 24066015

**Bragalone Conroy PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
pconroy@bcpc-law.com
bkennedy@bcpc-law.com
tsaad@bcpc-law.com
**ATTORNEYS FOR PLAINTIFF VISTA
PEAK VENTURES, LLC**